IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF BEDFORD, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>215 East Main Street<br>Bedford, Virginia 24523<br><br>   Plaintiff,<br><br>   v.<br><br>ERIC HOLDER,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. _____<br><br><br><br><br><br>)    Three-Judge Court Requested |

## COMPLAINT

The City of Bedford, Virginia, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff City of Bedford ("the City") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). City of Bedford, Virginia is located in the Shenandoah Valley, approximately 178 miles from Washington, DC. The City covers 6.81 square miles.

3. The Bedford City Council is the governing body that formulates policies for the administration of government in the City. The City has a seven-member city council. Members are elected at-large and serve a four-year term. Terms are staggered such that at least three members are up every two years. City Council elects the Mayor and Vice-Mayor from their members for a two-year term.

4. There are no other elected governmental units within the meaning of 42 U.S.C. §1973b(a)(1) that exist within the City of Bedford. The schools in the City are governed by the Bedford County School System, which is not a city entity.

5. The City of Bedford is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

6. According to the 2010 census, City of Bedford, Virginia has a total population of 6,222. Of this number, approximately 1,245 persons (or 20.2%) are black and 134 (or 2.2%) are Hispanic. The voting age population of the City, according to the 2000 census, is 4,944. Of this number, 947 (19.2%) are black and 89 (1.8%) are Hispanic.

7. There are presently a total of 2 polling locations (and an additional central absentee voting location) located conveniently to voters across the City. All polling places in the City are accessible to voters with physical disabilities.

8. Like other jurisdictions in the Commonwealth of Virginia, the City does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the City's voting age population is registered to vote. As of the

end of 2010, there were 3,865 registered voters in the City of Bedford. This constituted 78.7% of the City's voting age population.

9. The number of registered voters in the City of Bedford has risen over the decade. In 2000, for example, there were only 3,567 registered voters in the City. By 2005, the number of registered voters had grown to 3,677. From 2000 to 2011, the total number of registered voters in the City grew by 8.1%, from 3,567 in 2000 to 3,857 as of today.

10. Voter turnout in elections within the City of Bedford (*i.e.,* the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last three Presidential elections in 2000, 2004, and 2008, for example, 69.7%, 69.9%, and 75.2% of the City's registered voters turned out to vote, respectively. In the General Elections for Governor held in November 2001, 2005, and 2009, 50.4%, 50.3%, and 41.7% of the City's registered voters turned out to vote, respectively. Voter turnout for the Bedford City Council elections in the last seven election cycles (1998, 2000, 2002, 2004, 2006, 2008, and 2010) was 23.2%, 25.5%, 23.9%, 4.8%, 52.8%, 75.2%, and 50.7%, respectively.

11. As a political subdivision of the Commonwealth of Virginia, plaintiff City of Bedford has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including the City of Bedford, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

12. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act. This exemption process is known as "bailout".

13. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

14. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;

        B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and

        C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

15. As described in each of the paragraphs set forth below, the City of Bedford has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 13 and 14, *supra*.

16. Over the years, the City of Bedford has made numerous timely submissions to the Department of Justice seeking preclearance of voting changes under Section 5 of the Voting Rights Act. The defendant Attorney General has approved each and every one of these voting changes. Since passage of the Voting Rights Act in 1965, not a single objection has been interposed by the Department of Justice to any voting change in the City. In approving each and every change, the defendants have concluded that the voting changes submitted were free of a racially discriminatory purpose or a racially discriminatory effect. Many of the voting changes made over the years in the City of Bedford and submitted for Section 5 preclearance actually expanded the opportunities for City residents to become registered voters and to cast ballots.

17. Voter registration opportunities in the City are readily and equally available to all citizens. The voter registration office for the City is located at 215 E. Main St., Second Floor in Bedford. The office is a central and convenient location for City residents. The voter registration office is open from 8:30 a.m. until 4:30 p.m., Mondays, Tuesdays, and Thursdays; and from August to December, is open Monday through Friday.

18. Voters in the City of Bedford may also register by mail, and voter registration applications are available at locations convenient to voters in the City, such as the Division of Motor Vehicles, Libraries, Post Offices, and other Government agency offices in the City.

19. The opportunity to become a registered voter in the City of Bedford is also available under the National Voter Registration Act (the "NVRA") at Department of Motor Vehicle ("DMV") offices and public assistance agencies in the City, as noted above. While in past years most voters became registered at the City's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the great majority of registration applications. Today, many of the City's new registrants register through the DMV and by mail, and the opportunities for persons to register to vote has been made more convenient and available as a result of implementation of the NVRA.

20. The City of Bedford has a three-member Electoral Board, appointed pursuant to Virginia state law. Since 2002, one black citizen has served as a member of the three-person Electoral Board. The Electoral Board nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

21. In the last gubernatorial election held in the City of Bedford (November 2009), there were 19 poll workers, three (16%) of whom were black. In the last city council election held in the City (November 2010), there were 19 poll workers, of whom

4 (21%) were black. The percentage of black poll workers in the City slightly exceeds the percentage of the City's black voting age population (19.2%).

22. Black citizens have played an important role in the voter registration office. As noted above, see ¶20, *supra*, the Electoral Board in the City has had one black member. In addition, since 1999, two black citizens of the City have worked in the voter registration office each February assisting with the registration of high school students turning 18 years of age. Two members of the Recreation Advisory Committee, one member of the City Planning Commission, one member of the Redevelopment & Housing Authority, and one member of the City School Board are black.

23. No person in the City of Bedford has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

24. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in the City of Bedford as a prerequisite to either registering or voting for at least the preceding ten years.

25. The City of Bedford has never been the subject of any lawsuit in which it was alleged that a person (or persons) was being denied the right to vote on account of race, color, or membership in a language minority group.

26. No voting practices or procedures have been abandoned by the City or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race, color, or membership in a language minority group.

27. The City of Bedford has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in

the City.  Minority voters in the City are not being denied an equal opportunity to elect candidates of their choice to the City Council.

28.  Federal examiners have never been appointed or assigned to the City under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

29.  There are no known incidents in the City where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

30.  The allegations set forth in paragraphs 16 through 29, above, if established, entitle the City of Bedford to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the City and all governmental units within the City from the special remedial provisions of the Voting Rights Act.

31.  Pursuant to 42 U.S.C. §1973b, the City has "publicize[d] the intended commencement …of [this] action in the media serving [the City] and in the appropriate United States post offices."   On January 19, 2011, the City published a notice that it intended to seek an action in the United States District Court for the District of Columbia to seek an exemption from the Voting Rights Act's §5 preclearance requirements in the Bedford Bulletin.  The Bedford Bulletin is a weekly newspaper of general circulation in the City of Bedford.  In addition, the City has posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout City of Bedford, including City Hall, the Office of Voter Registration, and the City's website.

WHEREFORE, plaintiff City of Bedford respectfully prays that this Court:

A.  Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B.  Enter a declaratory judgment that the City of Bedford and all governmental units within the City are entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C.  Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

**For the Plaintiff CITY OF BEDFORD:**

_____

**J. GERALD HEBERT**
DC Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
Telephone (703) 628-4673
Email: hebert@voterlaw.com
Email: jghebert@comcast.net


**WILLIAM W. BERRY, IV**
VABAR No. 09113
206 E. Main Street
Bedford, Virginia 24523
Telephone (540) 586-8133
Fax: (540) 586-8569