IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF BEDFORD, VIRGINIA, <br> a political subdivision of the <br> Commonwealth of Virginia, <br> 215 East Main Street <br> Bedford, Virginia 24523 <br><br> Plaintiff, <br><br> v. <br><br> ERIC HOLDER, <br> Attorney General of the <br> United States of America; <br> THOMAS E. PEREZ, <br> Assistant Attorney General, <br> Civil Rights Division, United States <br> Department of Justice, Washington, DC, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | FILED <br><br> AUG 3 1 2011 <br><br> Clerk, U.S. District & Bankruptcy <br> Courts for the District of Columbia <br><br><br> Civil Action No. 1:11-cv-00473 <br> (TFH-TBG-RLW)(three-judge court) |

## CONSENT JUDGMENT AND DECREE

1.  This action was initiated on March 4, 2011, by the Plaintiff City of Bedford, Virginia ("City of Bedford" or "the City"), against the Defendant Attorney General of the United States and the Defendant Assistant Attorney General, Civil Rights Division (collectively the "Attorney General").

2.  The City of Bedford is a governmental entity organized under the Constitution and laws of the Commonwealth of Virginia. Plaintiff City of Bedford is a political subdivision of the State within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

3.  The City of Bedford is covered by the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c, based on a coverage determination under

1

Section 4(b) made by the Attorney General and the Director of the Census, and published in the Federal Register. 30 Fed. Reg. 9897 (Aug. 7, 1965). By virtue of this coverage determination, the City of Bedford must receive preclearance under Section 5 of the Act for all changes enacted or implemented after November 1, 1964 that affect voting.

    4.    Through this action, the City seeks a declaratory judgment pursuant to the "bailout" provisions of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1), declaring it exempt from coverage under Section 4(b) of the Act, 42 U.S.C. 1973b(b). Bailout also exempts the jurisdiction from being subject to the preclearance provisions of Section 5 of the Act, 42 U.S.C. § 1973c.

    5.    This three-judge district court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

    6.    Section 4(a) of the Voting Rights Act provides that a political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions through an action for a declaratory judgment before this Court if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a) for both the ten years preceding the filing of the action, and throughout the pendency of the action. As set forth in Section 4(a)(1), the conditions the City must satisfy are as follows:

> (A) no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section [42 U.S.C. § 1973b(a)(1)(A)];
>
> (B) no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of

this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote [42 U.S.C. § 1973b(a)(1)(B)];

(C)  no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision [42 U.S.C. § 1973b(a)(1)(C)];

(D)  such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment [42 U.S.C. § 1973b(a)(1)(D)];

(E)  the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending [42 U.S.C. § 1973b(a)(1)(E)]; and

(F)  such State or political subdivision and all governmental units within its territory-- (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. [42 U.S.C. § 1973b(a)(1)(F)(i-iii).]

7.     Section 4(a) also provides that the following additional requirements must be satisfied to obtain a bailout:

(2) To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority

3

participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. [42 U.S.C. § 1973b(a)(2).]

(3) No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. [42 U.S.C. § 1973b(a)(3).]

(4) The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices. [42 U.S.C. § 1973b(a)(4).]

8. Finally, Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)]."

9. The Attorney General has conducted a comprehensive and independent investigation to determine the City's entitlement to bailout. In so doing, he has, among other things, interviewed members of the local minority community, and reviewed a significant number of documents related to the City, including available background information and demographic data, minutes of the meetings of the Bedford City Council, records relating to voter registration and turnout in the City, and records of the City's preclearance submissions.

10. The Attorney General and City of Bedford agree that the City has fulfilled the conditions required by Section 4(a) and is entitled to the requested declaratory judgment

allowing it to bail out of Section 5 coverage. Accordingly, the City and the Attorney General have filed a Joint Motion for Entry of this Consent Judgment and Decree.

## AGREED FACTUAL FINDINGS

11. The City of Bedford is located in the Shenandoah Valley, approximately 178 miles from Washington, DC, and covers 6.81 square miles.

12. The City of Bedford is the only governmental subdivision within the City of Bedford.

13. According to the 2010 census, City of Bedford has a total population of 6,222. Of this number, approximately 4,671 (75.1%), are non-Hispanic white, 1,318 (21.2%) are non-Hispanic black and 134 (2.2%) are Hispanic. According to the 2010 census, the total voting age population of the City of Bedford is 4,944. Of this number, 3,830 (77.5%) are non-Hispanic white, 960 (19.4%) are non-Hispanic black, and 89 (1.8%) are Hispanic.

14. The Bedford City Council is the governing body that formulates policies for the administration of government in the City. The City has a seven-member City Council. Members are elected at-large and serve a four-year term. Council contests feature no primary elections, only general elections that are conducted by plurality-vote with no numbered posts. Terms are staggered such that at least three members are up every two years. The City Council elects the Mayor and Vice-Mayor from their members for a two-year term. Three black members have served on the City Council since 1972 -- one black member has served on the seven-member council during each of three time periods -- from 1972 to 1980, from 1990 to 1995, and from 1995 to the present.

15. Elections in City of Bedford are conducted by a three-member Electoral Board and the City's General Registrar. Pursuant to State law, the Electoral Board is appointed by the

Circuit Court to administer the election laws and other regulations established by the State Board of Elections. Two electoral board members must be of the same political party that cast the highest number of votes for the Governor at the last election; the third member must be of the political party that cast the next-to-highest number of votes in the last gubernatorial election. Each electoral board member serves a three-year term. The Electoral Board appoints the General Registrar. Since 2004, two black members have served on the Electoral Board -- one black citizen has served as a member of the three-person Electoral Board during each of two time periods, from 2004-2009 and from 2009 to the present.

16. The Electoral Board nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years. In the last gubernatorial election held in the City of Bedford (November 2009), there were nineteen poll workers, three (16%) of whom were black. In the last City Council election held in the City (November 2010), there were 19 poll workers, four (21%) of whom were black. The percentage of black poll workers in the 2010 election in the City slightly exceeded the percentage of the City's black voting age population (19.4%).

17. Since the City does not record the race of its registered voters, it is unable to present evidence directly measuring minority voter participation, but the City has provided evidence of voter participation for elections since 2000. Current data show, for example, that a significant proportion of the City's voting age population is registered to vote. As of the end of October 2010, there were 3,849 registered voters in the City of Bedford. This constituted 77.9%

of the City's 2010 voting age population of 4,944 persons. The number of registered voters in the City of Bedford has risen over the decade. From 2001 to 2010, the total number of registered voters in the City grew by 8.6%, from 3,543 in 2001 to 3,849.

18. Voter turnout in elections within the City of Bedford (*i.e.,* the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last three Presidential elections in 2000, 2004, and 2008, for example, 69.7%, 69.9%, and 75.2% of the City's registered voters turned out to vote, respectively. In the General Elections for Governor held in November 2001, 2005, and 2009, 50.4%, 50.3%, and 41.7% of the City's registered voters turned out to vote, respectively. Voter turnout for the Bedford City Council elections in the last seven election cycles (1998, 2000, 2002, 2004, 2006, 2008, and 2010) was 23.2%, 25.5%, 23.9%, 4.8%, 52.8%, 75.2%, and 50.7%, respectively.

19. Voter registration opportunities in the City are available to all citizens. The voter registration office for the City is located at 215 E. Main St., Second Floor in Bedford. The voter registration office is open from 8:30 a.m. until 4:30 p.m., Mondays, Tuesdays, and Thursdays; and, from August to December, is open Monday through Friday. Voter registration applications are also available at the local library, at the City's social services offices, on the website of the State Board of Elections, and at Division of Motor Vehicle Offices. Voter registration is also available by mail-in application.

20. In addition to serving on the City's three-person Electoral Board, black citizens have played an important role in the voter registration office. Since 1999, for example, two black citizens of the City have worked in the voter registration office each February assisting with the registration of high school students turning 18 years of age.

21. The City of Bedford has made eight submissions to the Attorney General under Section 5 of the Voting Rights Act during the period covering the ten years preceding this action, and the Attorney General has not interposed an objection to any of these submissions. The Attorney General reviewed the records of the City of Bedford in the course of considering the City's bailout request, and no voting changes were discovered in the City's records that had not been submitted for preclearance in a timely manner. Hence, the Attorney General's investigation indicates that the City has not enforced any changes prior to receiving preclearance during the previous ten years and during the pendency of this action.

22. The City has publicized the intended commencement of this action and a proposed settlement of the action as required by Section 4(a)(4) of the Act prior to its being filed. On January 19, 2011, the City published a notice that it intended to file an action in the United States District Court for the District of Columbia to seek an exemption from the Voting Rights Act's §5 preclearance requirements, in the <u>Bedford Bulletin</u>. The <u>Bedford Bulletin</u> is a weekly newspaper of general circulation in the City of Bedford. In addition, the City has posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout the City of Bedford, including City Hall, the Office of Voter Registration, and the City's website.

23. The Attorney General has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the City, pursuant to Section 4(a)(9) of the Voting Rights Act. The Attorney General's consent in this action is based upon its own independent factual investigation of the City's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in the City and surrounding areas, and the absence of racial discrimination in the electoral process within the

City. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

## AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

24. The City of Bedford is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date. There are no other governmental subdivisions within the City's territory for which it is responsible or which must request bailout at the same time as the City, within the meaning of Section 4(a), 42 U.S.C. § 1973b(a).

25. During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Section 4(c) of the Voting Rights Act used within the City for the purpose or with the effect of denying or abridging the right to vote on account of race or color. During the relevant time period there is also no indication that any person in the City of Bedford has been denied the right to vote on account of race or color. 42 U.S.C. § 1973b(a)(1)(A).

26. During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred anywhere within the territory of the City of Bedford. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No

action is presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

27. During the ten years preceding the filing of this action, and during the pendency of this action, no federal examiners or observers have been assigned to the City of Bedford. 42 U.S.C. § 1973b(a)(1)(C).

28. During the ten years preceding this action, and during the pendency of this action, the City made eight administrative submissions to the Attorney General for review under Section 5, and the Attorney General did not object to any of these submissions, and there is no evidence that the City enforced any changes that had an actual effect on voting in elections prior to receiving preclearance under Section 5. 42 U.S.C. § 1973b(a)(1)(D).

29. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the City to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. 42 U.S.C. § 1973b(a)(1)(D).

30. During the ten years preceding this action, and during the pendency of this action, the Attorney General has not interposed any objection to voting changes submitted by or on behalf of the City for administrative review under Section 5. No such administrative submissions by or on behalf of the City are presently pending before the Attorney General. The City has never sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied the City of Bedford a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. 42 U.S.C. § 1973b(a)(1)(E).

31. During the ten years preceding the filing of this action, and during the pendency of this action, the City of Bedford has not employed methods of election which inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i).

32. During the ten years preceding the filing of this action, and during the pendency of this action, there is no evidence that anyone participating in the City's elections has been subject to intimidation or harassment in the course of exercising his or her rights protected under the Voting Rights Act. Constructive steps have been undertaken by the City of Bedford to avoid intimidation or harassment in City of Bedford elections, such as by recruiting a diverse group of poll officials for elections in the City. 42 U.S.C. § 1973b(a)(1)(F)(ii).

33. All voter registration and all City elections have been conducted solely by the City of Bedford Electoral Board and the City's Voting Registrar throughout the ten years preceding the filing of this action and through the present time. There is evidence of other constructive efforts, such as expanded opportunities for convenient registration and voting for every person of voting age, as well as the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process. The percentage of black poll workers in the City in the 2010 election (21%) slightly exceeded the black share of the City's 2010 voting age population (19.2%). See 42 U.S.C. § 1973b(a)(1)(F)(iii).

34. During the ten years preceding the filing of this action, and during the pendency of this action, the City has not engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. § 1973b(a)(3).

35. As required by 42 U.S.C. § 1973b(a)(4), the City of Bedford has provided public notice of its intent to seek a Section 4(a) declaratory judgment, as well as its intention to reach a settlement of the bailout action with the United States Attorney General. On January 19, 2011, the City published a notice that it intended to seek an action in the United States District Court for the District of Columbia to seek an exemption from the Voting Rights Act's §5 preclearance requirements in the <u>Bedford Bulletin</u>. The <u>Bedford Bulletin</u> is a weekly newspaper of general circulation in the City of Bedford. In addition, the City has posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout City of Bedford, including City Hall, the Office of Voter Registration, and the City's website.

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The plaintiff City of Bedford is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the plaintiff City of Bedford is exempted from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

3. Each party shall bear its own costs.

Entered this 30 day of August, 2011.

_____
UNITED STATES CIRCUIT JUDGE

_____
UNITED STATES DISTRICT JUDGE

_____
UNITED STATES DISTRICT JUDGE

*Agreed and Consented To:*

/s/ J. Gerald Hebert
J. Gerald Hebert
D.C. Bar No. 447676
191 Somervelle Street, #405
Alexandria, VA 22304
Telephone: (703) 628-4673
hebert@voterlaw.com

William W. Berry, IV
VA BAR No. 09113
206 E. Main Street
Bedford, Virginia 24523
Telephone (540) 586-8133
Fax: (540) 586-8569

*Counsel for Plaintiff*
*City of Bedford, Virginia*

Dated: June 8, 2011

*Agreed and Consented To:*

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia


/s/ Robert Popper
T. CHRISTIAN HERREN, JR.
ROBERT POPPER
robert.popper@usdoj.gov
JOSHUA ROGERS
joshua.rogers@usdoj.gov
CHRISTY MCCORMICK
christy.mccormick@usdoj.gov
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254 NWB
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (800) 253-3931
Facsimile: (202) 307-3961

*Counsel for Defendants*
*Eric H. Holder, Jr.*
*Attorney General of the United States*
*and Thomas E. Perez,*
*Assistant Attorney General*
*Civil Rights Division*

Dated: June 8, 2011

*Eric H. Holder, Jr.*
*Attorney General of th*
*and Thomas E. Perez,*

*Assistant Attorney General,*